## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**NOAH PERRY,**

**Plaintiff,**

-against-

**MOM'S ORGANIC MARKET, INC., STACIE MAY, KYLE YOUNG, and LAURA McCALLUM,**

**Defendants.**

**COMPLAINT**

Case No. _____

**JURY TRIAL DEMANDED**

Plaintiff Noah Perry ("Plaintiff"), by his attorneys, LPJ Legal PLLC, whose offices are located at 700 Pennsylvania Ave SE, 2nd Floor, Washington, DC 20003 and Goddard Law PLLC, whose offices are located at 39 Broadway, Suite 1540, New York, New York 10006, as and for his Complaint in this action against Defendants Mom's Organic Market, Inc. ("Defendant Mom's Organic"), Stacie May ("Defendant May"), Kyle Young ("Defendant Young") , and Laura McCallum ("Defendant McCallum") (collectively "Defendants") alleges upon knowledge with respect to himself and upon information and belief as to all other matters as follows:

### PRELIMINARY STATEMENT

1. From the beginning of his employment at Defendant Mom's Organic in or around February 2020, through his constructive discharge in or around April 2021, Plaintiff both personally experienced and witnessed other employees become victims of continuous and rampant discrimination perpetrated mostly by upper management employees of Defendant Mom's Organic, who engaged in egregious acts of harassment, discrimination, and retaliation with complete impunity, all while Defendant Mom's Organic had been holding themselves out to be an entity whose mission was to "protect and restore the environment." They promote the idea of having a

1

CULTure and the inappropriate sexualized term "Momcest" is also used by Defendant Mom's Organic's employees to describe the culture.

2. During his employment with Defendant Mom's Organic, Plaintiff was subjected to a hostile work environment, and sex discrimination. In addition to being the target of retaliation, Plaintiff, despite his protestations, was also subjected to a hostile work environment in that he was forced to witness and endure rampant discrimination against other employees. Plaintiff witnessed discrimination against female, transgender, and non-binary employees who were subjected to egregious sexual harassment, and Black and Hispanic female employees, who were subjected to differential treatment and harassment on the basis of their race and/or national origin in combination with their gender. After Plaintiff reported these illegal practices, he was retaliated against, which ultimately resulted in his constructive termination. Plaintiff also witnessed retaliation against others who objected to discrimination.

3. Defendant Mom's Organic's Human Resources department, intentionally, and, or negligently, failed to handle complaints of discrimination and retaliation. Instead, Defendants retaliated against Plaintiff and other employees who complained of discrimination, including subjecting Plaintiff to further discrimination and retaliation while taking no corrective action against wrongdoers.

4. The hostile work environment which Plaintiff experienced while employed by Defendant Mom's Organic was well-known to Plaintiff, his co-workers and upper management, including Defendants Stacie May, Kyle Young and Laura McCallum. Additionally, it was well known amongst Defendant Mom's Organic's employees that complaints about the discrimination were rarely, if ever, addressed and rectified. As set forth in publicly submitted employee reports about Defendant Mom's Organic on the popular website www.glassdoor.com, multiple employees

have complained of discrimination and a hostile work environment at Defendant Mom's Organic stores spanning the past decade and up until the present. Some of the most relevant reports that refer to the hostility, discrimination, and lack of adequate Human Resources are listed as follows for purposes of aiding the EEOC with its investigation:

- "A lot of racism that management enables … Lack of diversity on the floor and in the office," dated December 1, 2021;

- "HR is a joke," dated November 30, 2021;

- "[P]oor, unfair, and unethical treatment of people … I have met few really great people here and they either quit or get fired unfairly - or are threatened off the clock so nothing can be done about it with HR … Managers who bully, harass, or are … sex addicts - while on the clock!!! … Only expect HR to protect your job IF it is convenient for them to do so. Otherwise, expect to get fired … The company knowingly employees … sexual predators, harassers and offenders, and less and less cares about the employees at the bottom level … you work at your own risk of being … sexually, emotionally, and psychologically abused. So much abuse of power … It's literally the same stuff you see in the media but on a smaller scale and at a local level," dated September 16, 2021;

- "You WILL get passed up for promotions in favor of young and/or white people. The diversity in the store was a joke. If you look at the area where the store is and compare the population to who is hired, you will see that they go out of their way not to hire black and brown people … Saw so many women sexually harassed, black and brown people disrespected and belittled (both by management and customers) while no one in management took them seriously or did anything about it … It's so clear you have some secret quota for the number of non-white people you hire and promote," dated August 27, 2021;

- "HR is a joke," dated June 10, 2021;

- "There should be more diversity, only white people in management positions and management usually targets POC and treats them less than. Under qualified white men need to stop being celebrated for mediocrity and given positions of power. The whole HR team is grossly unprofessional. My entire experience with this company has resulted into putting myself in therapy due to the constant gaslighting and mental gymnastics from the management team," dated May 16, 2021;

- "Sexual harassment, neglecting customers, and mistreatment of employees," dated March 15, 2021;

- "I left Mom's after many years because I was being discriminated against by a manager who has a track record of discrimination against black and brown employees. I was written up for several petty issues that were unrelated to my ability to do my job," dated January 28, 2021;

- "The regionals are incompetent and do not care if you are being treated unfairly. Most of the time they will say they do not have enough time to look into ILLEGAL activity at their stores?! The regionals play favorites with some managers even if they have been accused of sexually harassing employees and retaliating against you if you tell HR … Favoritism if you are an outgoing white male or female even if you are more qualified for a promotion. Little to no diversity especially higher ups including at their central office," dated November 24, 2020;

- "HR does not always honor confidentiality, and if you complain—especially about legitimate issues—you risk serious retaliation," dated October 29, 2020;

- "This leadership style creates extreme self-righteous abuse patterns in the customers but begins with the management...verbally and sexually...all rooted in fear and control," dated May 3, 2020;

- "I've seen racial discrimination and profiling, lack of diversity hiring, and plenty of prejudice -- from managers especially," dated June 29, 2019;

- "HR department is a joke," dated March 1, 2019;

- "Lack of HR support … Managers exist above the rules and often times outside of the principles without repercussion or training," dated October 10, 2017;

- "HR is the worst I have ever seen," dated August 28, 2017;

- "Do not bring any issues you have up with management or HR unless you want to blacklist yourself. Women are definitely paid less for the same work as their male counterparts. Don't worry though HR and Central Office will explain it away and tell you the highest paid person in the company is a female," dated August 7, 2017;

- "You will be sexually harassed and management will do nothing about it," dated April 26, 2015;

- "Bad and abusive behavior by upper-level management buried and not addressed. Saw many complaints about discrimination, sexual harassment and abusive situations ignored by human resources," dated January 5, 2015;

- "Management ignores complaints of sexual harassment. Management ignores complaints of verbal abuse. Management verbally abuses employees," dated October 15, 2014;

- "The worst problem with this company is their HR department and the way that employee complaints are handled … once an employee chooses to file a complaint, the HR department becomes very distant and uncommunicative," dated March 28, 2012.

5. As is abundantly clear from Plaintiff's allegations, Defendant Mom's Organic has long blatantly harbored a heavily discriminatory and hostile work environment, impacting countless employees in its over twenty stores for at least a decade.

## THE PARTIES

6. Plaintiff Noah Perry ("Plaintiff") is a citizen of the United States who lives in Prince George's County, Maryland. Plaintiff was subjected to sex discrimination and retaliation that resulted in his constructive termination from Defendant Mom's Organic.

7. Upon information and belief, Defendant Mom's Organic's headquarters are located at 5612 Randolph Road, Rockville, Maryland 20852.

8. At all times relevant, Plaintiff worked at Defendant Mom's Organic's location at 9801 Rhode Island Avenue, College Park, Maryland, 20740.

9. Defendant Stacie May ("Defendant May") was, at all times relevant herein, an Assistant General Manager and one of Plaintiff's supervisors at Defendant Mom's Organic's location at 9801 Rhode Island Avenue, College Park, Maryland.

10. Defendant Kyle Young ("Defendant Young") was, at all times relevant herein, a General Manager and one of Plaintiff's supervisors at Defendant Mom's Organic's location at 9801 Rhode Island Avenue, College Park, Maryland.

11. Defendant Laura McCallum ("Defendant McCallum") was, at all times relevant herein, the Regional Manager of Defendant Mom's Organic, managing approximately eleven stores throughout Maryland, Virginia, Washington D.C., and Delaware.

12. Plaintiff was, at all times relevant herein, Defendant Mom's Organic's "employee" within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000-e *et seq*. ("Title VII"), and §1981 ("Section 1981"). At all relevant times, Defendant Mom's Organic employed more than 15 employees.

13. According to its website, Defendant Mom's Organic operates grocery stores in four states and Washington D.C. and has over one thousand employees.

14. Defendant Mom's Organic was, at all times relevant herein, Plaintiff's "employer," within the meaning of Title VII and Section 1981.

## JURISDICTION, VENUE, AND PROCEDURAL REQUIREMENTS

15. This is a civil action for monetary damages and such other relief as the Court deems just and proper based upon Defendant Mom's Organic's discrimination and retaliation against Plaintiff based on his gender identity, and Defendant Mom's Organic's retaliation and constructive discharge of Plaintiff.

16. This Court has Jurisdiction over this action under 28 U.S.C.A. §§1331 and 1343(4).

17. Venue for this action properly lies in this district pursuant to 28 U.S.C § 1391.

18. All conditions precedent to filing the instant action have been fulfilled. On or about February 11, 2022, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On or about July 26, 2023 the EEOC issued Plaintiff a Notice of Right to Sue. This action is being brought within 90 days of Plaintiff's receipt of his Notice of Right to Sue.

## DEMAND FOR A JURY TRIAL

19. Plaintiff hereby demands a jury trial on each count of the Complaint.

## FACTUAL BACKGROUND

### Plaintiff is Hired at Defendant Mom's Organic College Park Location

20. In or about February 2020, Plaintiff, a white gay man, began his employment as an "Associate/Team Member" at Defendant Mom's Organic's College Park location.

21. Plaintiff's main duties included stocking products and assisting store customers.

22. Plaintiff's supervisors were Brian Berns ("Supervisor Berns"), a white man; Reina Hernandez, a Latina woman who was the General Manager at the time of Plaintiff's hiring

("General Manager Hernandez"); Brittany (last name unknown) ("Manager Brittany"), a white woman; Defendant McCallum, a white woman who was the Regional Manager, and Imani Newcomer ("Supervisor Newcomer"), a Black woman.

23. Supervisor Newcomer, Supervisor Berns, General Manager Hernandez, Manager Brittany, and Defendant McCallum had supervisory authority over Plaintiff, including the ability/authority to affect the terms and conditions of his employment, such as hiring, firing, promotion, and/or salary, and/or to otherwise influence the decisionmaker of the same.

**From the Beginning of His Employment at Defendant Mom's Organic, Plaintiff is Shocked by the Discriminatory Hostile Work Environment**

24. Immediately after Plaintiff started working at Defendant Mom's Organic, in or about February 2020, he was shocked at the openly offensive work environment that he witnessed, in which certain employees of color, employees with disabilities, and LGBT+ employees were made to feel less than other employees.

25. Specifically, on many occasions, Plaintiff witnessed General Manager Hernandez—who openly favored Hispanic employees over all Non-Hispanic employees—and Manager Brittany treat Black employees and customers more poorly and unfairly compared to their white and/or Non-Hispanic counterparts.

26. On multiple occasions, Plaintiff heard Manager Brittany make race-based discriminatory comments when talking about Black team members, calling them "lazy" and saying that they "talked too much" and "didn't work hard." Manager Brittany did not make such comments in relation to white team members.

27. Plaintiff observed Manager Brittany constantly following team members of color around the store, excessively over-criticizing and over-scrutinizing them, and micromanaging them in a way that she never did with white employees.

28. Moreover, Plaintiff observed that any time Manager Brittany put a product on a shelf where it did not belong—whether accidently or purposefully—she would blame her mistake on a Black employee. Plaintiff never observed Manager Brittany blame a white employee for a mistake which she had made.

29. Plaintiff observed that both General Manager Hernandez and Manager Brittany disciplined Black team members significantly more than white and Hispanic team members. General Manager Hernandez and Manager Brittany would publicly shame, yell at, and embarrass these Black employees in front of other team members and/or customers for things that white team members would never get disciplined for, and/or would assign them to the worst shifts in the store, such as cooler and freezer duty, that all employees viewed as a difficult and non-desirable shift. General Manager Hernandez and Manager Brittany did not treat white employees this way.

30. Plaintiff observed Manager Brittany use stereotypical and offensive Black colloquialisms, slang, "accents," and manners of speech when speaking to Black team members and customers, which she did not use when speaking to white team members and customers.

31. Plaintiff also observed General Manager Hernandez and Manager Brittany regularly make derogatory comments about Black customers but did not make such comments about white or Hispanic customers

**Manager Brittany Does Racist Impressions of a Black Character from Television**

32. In or around May 2020, Manager Brittany approached Plaintiff on the customer floor and greeted him with a racist impression of a Black character from television.

33. Specifically, Manager Brittany walked as if she were overweight, swinging her arms, and speaking in a racist accent that was meant to mimic Black people: "Hey, hey, hey, I'm HOOOOOOOOOOOONGRY" mimicking "Fat Albert," a Black cartoon character.

9

34.     Plaintiff was shocked that Manager Brittany did this directly in front of several customers who were shopping in the store and heard her racist impressions.

35.     Plaintiff was utterly shocked and disgusted by Manager Brittany's racist impression and did not know how to respond, and nervously went back to work.

36.     Plaintiff overheard Manager Brittany perform this racist impression on at least two other occasions in the Spring of 2020.

**Plaintiff Is Horrified to Hear His Supervisors Make Discriminatory Comments Against LGBTQ+ Individuals**

37.     Soon after starting to work at Defendant Mom's Organic, Plaintiff was made to feel extremely uncomfortable by Manager Brittany's homophobic and ignorant comments in relation to LGBTQ+ pronouns, which she went out of her way to make clear to all that she found ridiculous.

38.      Manager Brittany regularly announced that she would not be using any pronouns that were different from the "norm" of the gender binary male and female pronouns, which made Plaintiff feel extremely uncomfortable.

39.     Manager Brittany made such anti-LGBT discriminatory comments several times in front of Plaintiff, including saying that persons should not be able to refer to themselves as "they" or "them" which was a common practice among LGBTQ+ team members and customers. These comments made Plaintiff feel extremely uncomfortable and deeply offended. Plaintiff soon learned from coworkers that Manager Brittany regularly and openly made such discriminatory comments and that Defendant Mom's Organic's management was well aware of her discriminatory comments but did nothing about the hostile environment she created.

40.     Manager Brittany also regularly appeared disgusted by the concept of transgender people and said that she only "believed" in two genders, as if being transgender was not a "real"

10

gender identity. Plaintiff, who was proudly gay and intimately involved in the LGBTQ+ rights movement, was deeply offended by her comments.

41. Manager Brittany was not the only homophobic supervisor at the store. Plaintiff was extremely offended to hear General Manager Hernandez also make multiple inappropriate, discriminatory comments against the LGBTQ+ community. On at least two separate occasions, Plaintiff overheard General Manager Hernandez say out loud to a large group of store employees, including other managers, that she did not understand why "men" have to occupy places that are meant for "women," in reference to transgender individuals using the restrooms that correspond to their gender identity.

42. General Manager Hernandez—who was the "top Operations" person at the store— also regularly, openly favored other Hispanic employees over other employees. Because it was well known and discussed amongst team members that, as discussed on the Glass Door Reviews, the Human Resources department did not take discrimination complaints seriously and that employees who reported were retaliated against, Plaintiff felt that he could not report and keep his job.

### Plaintiff Complains to the New General Manager About Manager Brittany's Racist Impressions

43. In or around the spring of 2020, Defendant Kyle Young ("Defendant Young") was hired as a General Manager and became Plaintiff's supervisor. Plaintiff and other team members hoped that this leadership change would lead to a less hostile and blatantly discriminatory work environment.

44. Soon after Defendant Young's hiring, Plaintiff made him aware of the discriminatory and hostile work environment so that he could be aware of it and address it. Plaintiff specifically told Defendant Young about Manager Brittany's racist comments and her Fat Albert

impressions and her harassment of Black employees. Upon information and belief, Defendant Young did not take any action against Manager Brittany, who continued to make the racist impressions and say and do openly racist things.

45. Around this time, Plaintiff was shocked to witness Defendant Young himself openly engage in blatant discriminatory behavior and make racist comments.

46. Defendant Young often criticized and disciplined team members of color for the same alleged transgressions that white team members engaged in but were not disciplined for. He refused to give team members of color the shifts that they asked for although he typically gave white team members the shifts that they requested, and at all times openly favored white employees, including Plaintiff.

47. On a regular, approximately weekly basis, Defendant Young would stand in the front of the store and make racist and discriminatory comments about customers of color--mainly Hispanic and Black customers.

48. Defendant Young often called Black and Hispanic customers "ghetto," a derogatory term for neighborhoods where he believed Black and Hispanic people lived. He also called them "trashy," "low-class," "gang-bangers," and "drug dealers," made fun of their clothes, and said that they were "too poor" to shop at Defendant Mom's Organic.

49. Defendant Young also "joked" with team members about "checking their pockets" after customers of color left, implying that he expected them to steal from individual team members or from the store. Defendant Young made none of these comments in relation to white customers.

50. Defendant Young called Hispanic customers "oily" in an extremely derogatory tone when workers from a local mechanic's shop walked into the store wearing their work clothes from their job.

51. Defendant Young treated customers of color who appeared to be homeless more harshly than white customers who appeared to be homeless. For example, Defendant Young allowed white homeless customers access to Defendant's bathroom facilities, but demanded that black homeless persons leave Defendant Mom's Organic store immediately.

52. Additionally, Defendant Young would often refer to several Black patrons, who believed in homeopathic cultures, as "hoteps," a derogatory term for Black individuals who were perceived to believe in holistic healing practices. Plaintiff knew that Defendant Young's use of "hotep," was derogatory, particularly when he used in conjunction with adjectives such as "smelly."

53. Defendant Young often said that he was "tired of dealing" with customers of color, that they "always want[ed] discounts," and that he had to "follow them around the store" to make sure they didn't steal any products.

54. Defendant Young also allowed white customers to be rude to team members of color in a racist manner and did nothing to stop his certain employees from abusing the customers.

55. Plaintiff was repeatedly shocked and horrified by Defendant Young's racist statements, but he did not want to lose his job, so he kept his head down and did his job. He received excellent feedback from his supervisors, who told him that he was a hard-working and conscientious employee. Given that Defendant Young had taken over the role of the top Operations person at the store, Plaintiff believed that complaining about Defendant Young's conduct would be fruitless and would put his job in jeopardy. Moreover, Plaintiff was constantly reminded by his co-workers that the Human Resources department did not take discrimination complaints seriously.

**Defendant Mom's Organic Externally Hires a New Assistant General Manager, Stacie May, Instead of Promoting Newcomer, an Exceptional Black Manager-in-Training**

56. On or about December 20, 2020, external hire Stacie May, a white woman, joined the team at Plaintiff's store as the Assistant General Manager ("Defendant May").

57. Plaintiff was perplexed that Defendant Mom's Organic had hired this woman from outside the company into a management position and did not promote Supervisor Newcomer, a Black woman who was an excellent manager and who should have been next in line to be promoted to that position since she had been in a Manager-in Training role for many years already.

58. Upon information and belief, it was Defendant Mom's Organic's established practice to hire/promote white employees over employees of color.

59. Plaintiff also learned that an older Black female team member named Sonya (last name unknown) ("Team Member Sonya"), was tasked with Assistant manager level work but never promoted.

60. When Defendant May was hired, Team Member Sonya told Plaintiff that it was "really unfair" that Supervisor Newcomer, who was an excellent worker and an excellent manager, had not been promoted and that Defendant Mom's Organic had hired Defendant May instead of promoting her. Plaintiff agreed. In fact, the entire staff was upset because they liked working with Supervisor Newcomer.

61. Upon information and belief, Defendant Mom's Organic has a pattern and practice of not promoting or providing equal pay to workers of color, and especially female workers of color.

**Defendant May Immediately Contributes to the Discriminatory Hostile Work Environment
by Targeting Employees of Color**

62.     As soon as Defendant May started working at Defendant Mom's Organic, Plaintiff personally observed continuous and overt discriminatory behaviors by Defendant May.

63.     Defendant May constantly spoke to Hispanic team members mockingly in broken English as if addressing children, even though the employees were fluent in English. Plaintiff observed that Defendant May did not talk in this belittling and demeaning manner to white or non-Hispanic team members.

64.     Defendant May also used a distinguishable harsh and belittling tone to Black and Hispanic team members, while being friendly, accommodating, and using a positive tone of voice when addressing white team members.

65.     Plaintiff spoke with many employees of color concerning her belittling treatment of them and was told that it made them feel extremely uncomfortable and offended.

66.     Plaintiff also witnessed Defendant May overly shadowing, scrutinizing, and criticizing only employees of color as well as disciplining them much more than white employees.

67.     Plaintiff also observed that Defendant May and Defendant Young referred to Black female employees as "wolves."  Plaintiff would often overhear Defendant May and Defendant Young mocking the actions of these employees, recounting to one another something they perceived as funny which a "wolf" had done that day.

68.     Plaintiff observed that Defendant May also treated white customers more positively than customers of color and followed Black customers around the store as if she were convinced that they would be stealing from the store.

69. Defendant May used a racist and stereotypical offensive accent to talk about South Asian (mainly Indian) customers, repeatedly using the stereotypical voice of an Indian character on the television show "The Simpsons" when she referred to South Asian customers.

70. Plaintiff also personally observed Defendant May engage in racist conversations. When Defendant Young made racist comments about customers of color, she laughed with him, thereby acquiescing to his discriminatory conduct. Plaintiff was disappointed that Defendant Mom's Organic had hired yet another racist manager, and that she and Defendant Young egged each other on in creating a discriminatory hostile work environment.

71. Defendant May also engaged in discriminatory behaviors in cohort with Defendant McCallum. Plaintiff noticed that as soon as any employee reported or complained about anything, including discrimination, Defendant May and Defendant McCallum would both excessively target those employees, including following them around the store as they worked and waiting for the smallest mistake in order to discipline them in retaliation for complaining.

72. Strangely, Defendant May regularly encroached the personal space of team members of color, whom she would patronizingly pat and/or aggressively grab, making them feel extremely uncomfortable. By way of example, Defendant May would often walk up behind an individual team member of color and rub his or her back, and grab his or her forearms, or shoulders. Specifically, Plaintiff observed Defendant May aggressively touch Supervisor Newcomer, a Black employee, whom Plaintiff knew was uncomfortable with the touching.

73. Although Defendant May also touched white employees from time to time, she was far less aggressive when touching white team members, using an open palm and a short, soft caress, as opposed to aggressively grabbing and clutching people of color.

74.     Plaintiff and other employees understood the aggressive touching to be a "power play" by Defendant May in an effort to intimidate employees of color. Plaintiff and other employees made multiple complaints about Defendant May's inappropriate touching, but nothing was done by Defendant Mom's Organic to stop it from continuing.

75.     On at least two separate occasions, Plaintiff spoke directly to Defendant May about Supervisor Newcomer, a Black female employee, not wanting to be touched but she ignored his statements.

76.     Several female employees of color complained to Plaintiff about being touched by Defendant May and he reported the incidences on several occasions to Supervisor Newcomer.

### Plaintiff's White Supervisor Discriminatorily Mimics a Black Cartoon Again

77.     In or around January 2021, Manager Brittany approached Plaintiff and once again mimicked Fat Albert. She pretended she was overweight, waved her hands, and said "Hey, hey, hey…" in an extremely inappropriate and racist manner.

78.     Plaintiff was at a loss for words and did not know how to react to this overt racism. Given the fact that Defendant Young and Defendant May made racist comments almost every day and that Human Resources had a horrible reputation of inaction and retaliation, Plaintiff did not know who to turn to for help in stopping the hostile work environment.

### Defendant Young Allows for Sexual Harassment to Permeate the Workplace

79.     In or around February 2021, Plaintiff learned that a team member named "Duke" was fired because he was requesting sex from female employees in exchange for drugs. However, upon information and belief, Defendant Young had known about this activity in the store for many weeks but had not taken appropriate action to remedy the harassment.

**Defendant Mom's Organic's Human Resources Department Fails to Properly Respond to and Investigate Discrimination Complaints**

80. In or around March 2021, Plaintiff saw that Defendant Mom's Organic had sent a Human Resources representative to the store and an email was sent to the staff telling them that a Human Resources representative would be in a meeting room if team members wanted to "speak to HR."

81. The Human Resources representative sat in the main conference room in plain view of all team members and asked people to publicly "sign up" on a sign-in sheet if they wanted to talk to her.

82. Plaintiff knew for a fact that team members, including himself, felt afraid to complain about the racism and discrimination to the Human Resources representative where they could be openly seen by all of their co-workers and managers.

83. Upon information and belief, the public placement of the HR representative was intended to and did stop employees from reporting.

**Serial Sexual Harassment Perpetrator is Not Terminated**

84. Shockingly, in or around April 2021, Plaintiff learned that a second employee, Andrew Newman ("Team Member Newman") had been put on "permanent leave" instead of being terminated after sexually harassing several female employees.

85. Upon information and belief, Team Member Newman is still on leave and has not been terminated and as a result is still eligible to work for Defendant Mom's Organic.

**Defendant May Continues to Make Racist and Discriminatory Comments**

86. In or around April 2021, while Plaintiff was stocking the freezer, Defendant May approached Plaintiff and said to him in a stereotypical South Asian (Indian) accent: "None for you,

thank you come again," using the voice of a South Asian character on the television show "The Simpsons." Plaintiff was stunned by this racist comment and did not know what to say.

87. Approximately one week later, Defendant May made another racist comment, this time against Asian-Americans, to Plaintiff and a new team member who had just been hired. Specifically, Defendant May was mocking and disparaging a customer who used a Halloween mask in order to comply with New York State's Covid-19 mask mandate. She said to Plaintiff: "I don't know how he can see, but I guess Asian people manage" thereby implying that Asian-American people could not "see" well because of the shape of their eyes. She then took her index fingers and pulled the corners of her eyes out towards her temples while squinting her eyes.

88. Plaintiff calmly said to Defendant May: "That isn't funny, and you can't say that stuff. It's not acceptable." Defendant May immediately turned away from Plaintiff in fury.

89. When later on Plaintiff saw Defendant May in an employee-only area, he said, "That kind of thing just isn't funny" and "we need to make sure that the new staff feel welcome." Defendant May said she was "just joking" and turned away in visible anger.

90. Around this time, Plaintiff noticed an increase in Defendant May touching him in ways that made him feel extremely uncomfortable. She frequently attempted to touch his arm and back aggressively and even tried to grab his hand in hers when walking, which made him feel extremely uncomfortable and anxious. Plaintiff understood that she was attempting to intimidate and scare him in retaliation for him telling her to stop making discriminatory comments.

91. Despite the fact that Defendant May's inappropriate touching made Plaintiff feel extremely uncomfortable, he was nervous to object too strongly to Defendant May so he would lightly take her hands off of him, walk away politely, or make a joke as he pulled away from her.

19

92. On or about April 15, 2021, Plaintiff reported Defendant May's and Manager Brittany's discriminatory comments and behaviors to Supervisor Newcomer.

93. Specifically, Plaintiff complained to Supervisor Newcomer about Defendant May's recent racist comments in relation to South Asian (Indian) and Asian-American customers.

94. On or about April 18, 2021, Plaintiff approached Assistant Manager Newcomer and insisted that something had to be done about Defendant May touching him and other team members. Plaintiff reminded Assistant Manager Newcomer that he had repeatedly complained that Defendant May had been inappropriately touching many women of color, and reported that, ever since he had admonished her for telling a racist "joke," she had also started touching him in an inappropriate manner. Plaintiff told Assistant Manager Newcomer that he had had enough. He asked if he needed to file a police report in order to stop Defendant May from touching certain employees because he had complained to Defendant Mom's Organic about her assaults, and no one had taken him seriously or done anything about it at all. Plaintiff even mentioned to Supervisor Newcomer that he had repeatedly observed Defendant May inappropriately touch her, and had heard Supervisor Newcomer's vehement objections to such touching.

95. Plaintiff further informed Supervisor Newcomer about Manager Brittany's "Fat Albert" impressions and about the fact that she made discriminatory comments against transgender individuals.

96. Supervisor Newcomer said that she was aware of these types of incidents occurring and that she had been reporting the incidents and would again. She thanked Plaintiff for his report, saying she hoped that Defendant Mom's Organic would respond to the reports.

**Immediately After Plaintiff's Report of Discrimination, He Faces Retaliation**

97. On or about April 19, 2021, merely *one* day after he complained to Supervisor Newcomer about discrimination, Defendant May, Defendant Young, and Defendant McCallum began retaliating against Plaintiff.

98. Specifically, Defendant May started to ignore Plaintiff and to glare at him menacingly throughout the day. Defendant Young also started ignoring Plaintiff. When Defendant May did talk to Plaintiff, she was angry and rolled her eyes.

99. A few days after Plaintiff's complaint, Defendant McCallum came into the store and for more than an hour followed Plaintiff around while glaring at him in an intimidating way. It appeared to Plaintiff that she was waiting for him to make a mistake so that she could discipline him in retaliation for complaining of discrimination, as was often done when employees of color complained.

100. During her excessive micromanaging, Defendant McCallum pounced on Plaintiff and told him that he could not listen to music in one ear while he stocked products on the shelves and said that she was going to "write him up" for it.

101. Startled, Plaintiff informed Defendant McCallum that the store policy allowed team members to listen to music while stocking shelves.

102. Defendant McCallum also reprimanded Plaintiff in an unreasonably harsh manner for his shirt being "lifted up" when he was stocking a high shelf, a nonsensical criticism, and something for which he had never been reprimanded for before.

103. Around that same time, Defendant Young approached Plaintiff and told him that he would be disciplined because he had arrived "late" for shifts on two dates. Shocked, Plaintiff said that he had never been late to work and asked Defendant Young to show him his timecards.

104. When Plaintiff and Defendant Young looked at his timecards, Plaintiff proved to him that he had only been late to Defendant Mom's Organic once, one year prior, and reminded him that write ups for tardiness expired after 90 days. Defendant Young was angrily forced to admit that he could not "write Plaintiff up" for lateness and blatantly exposed the fact that Defendant Mom's Organic's management was looking for any excuse to write Plaintiff up in order to get him fired in retaliation for complaining about discrimination.

105. Defendant Young and Defendant May also tried to force Plaintiff to sign a document that said that he had multiple write-ups, which was blatantly false. Plaintiff understood this to also be in retaliation for his report of discrimination.

106. In addition, when Plaintiff requested a simple schedule change from Defendant Young, which was a standard procedure for all team members and were routinely granted, his request was mysteriously "denied," with no explanation, even though this had never happened before he reported the discrimination that had been taking place at Defendant Mom's Organic's store.

### Supervisor Newcomer is Unfairly Terminated

107. On or about April 22, 2021, Plaintiff was shocked to receive an email stating that Supervisor Newcomer had been terminated from Defendant Mom's Organic.

108. Plaintiff spoke with his colleagues, who all believed that Supervisor Newcomer, who was Black, was terminated from Defendant Mom's Organic because she had reported racism and discrimination at Defendant Mom's Organic. Plaintiff and his colleagues were absolutely shocked that Supervisor Newcomer had been fired since they all agreed that she had been an excellent manager.

109. Upon information and belief, Supervisor Newcomer was terminated in retaliation to her persistent reporting of racism and discrimination to Defendant Young and to the Human Resources department of Defendant Mom's Organic.

**<u>Plaintiff is Constructively Discharged</u>**

110. Plaintiff, who had confronted Defendant May about her racist statements, had reported the discrimination to Supervisor Newcomer, and was being overtly retaliated against, knew that Defendant Mom's Organic would either terminate him or continue to treat him terribly so that he was forced to quit.

111. Unable to tolerate the hostile work environment and blatant retaliation any longer, on or about April 22, 2021, Plaintiff felt forced to resign from his employment at Defendant Mom's Organic.

112. In Plaintiff's "exit interview" with Human Resources, he told them that he was resigning because Defendant Mom's Organic was a "hostile work environment." He reported many of the unlawful things that he had witnessed while he was working at Defendant Mom's Organic – the racist comments, the discriminatory behavior, Defendant May's offensive touching, his report of discrimination, and the immediate retaliation that he experienced. He also told the Human Resources representative that they *had* to respond to the racist and discriminatory behaviors.

113. Upon information and belief, Defendant Mom's Organic has since failed to respond to the discrimination, racism, and retaliation that is rampant at Defendant Mom's Organic or to Plaintiff's report of the same.

114. Upon information and belief, since Plaintiff's termination, Defendant Mom's Organic has promoted Defendant May and made her the Manager of their flagship location.

115. Adding insult to injury, on or about June 15, 2021, Defendant posted on their website that they are learning how to be a "non-racist" company.

<u>**COUNT I**</u>
*(Gender, Sex and Sexual Orientation Discrimination in Violation of Title VII – Against Defendant Mom's Organic)*

116. Plaintiff incorporates herein by reference paragraphs 1 through 115 of the Complaint.

117. Defendant Mom's Organic has discriminated against Plaintiff in violation of Title VII by subjecting him to different treatment and a hostile work environment on the basis of his gender, sex, and sexual orientation. Plaintiff has suffered both disparate impact and disparate treatment as a result of Defendant Mom's Organic's wrongful conduct.

118. Defendant Mom's Organic has discriminated against Plaintiff by treating him differently from, and less preferably than, similarly-situated non gay/lesbian/bisexual/transgender individuals on the basis of his gender, sex, and sexual orientation in violation of the law.

119. The hostile work environment that Plaintiff suffered was severe, pervasive, and unwelcome by Plaintiff, would be offensive to a reasonable person, and severely affected the terms and conditions of his employment.

120. Defendant Mom's Organic's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff, entitling Plaintiff to punitive damages.

121. By reason of Defendant Mom's Organic's discrimination, Plaintiff is entitled to all remedies available for violations of Title VII.

**COUNT II**
*(Retaliation in Violation of Title VII—Against Defendant Mom's Organic )*

122.     Plaintiff incorporates herein by reference paragraphs 1 through 121 of this Complaint.

123.     Plaintiff reported to Defendant Mom's Organic about their discriminatory treatment of his co-workers and himself.  In retaliation, Defendant Mom's Organic subjected Plaintiff to a series of employment actions, including, but not limited to, additional discrimination in the form of unwanted touching and sexual harassment, and the constructive termination of Plaintiff's employment.

124.     Defendant Mom's Organic's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff.

125.     As a result of Defendant Mom's Organic's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to list earnings, lost benefits, other financial loss, and non-economic damages.

126.     By reason of Defendant Mom's Organic's discrimination, Plaintiff is entitled to all remedies available for violations of Title VII.

**COUNT III**
*(Retaliation in Violation of 42 U.S.C. § 1981—Against all Defendants)*

127.     Plaintiff incorporates herein by reference paragraphs 1 through 126 of this Complaint.

128.     Plaintiff repeatedly complained to Defendants about the severe and pervasive race and ethnicity discrimination to which his Black and Hispanic co-workers were subjected to, and which he was forced to endure.

129.     Plaintiff notified Defendants of this severe race and ethnicity discrimination and hostile work environment and repeatedly protested to the harassment and discrimination.

25

130. Plaintiff's complaints were repeatedly ignored and discouraged by Defendants in accordance with Defendant Mom's Organic's policy, practice, and/or custom of discrimination and retaliation.

131. As set forth in detail above, Defendants retaliated against Plaintiff by, *inter alia*, constructively terminating his employment because of his engagement in activities protected under Section 1981.

132. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary, and/or economic harm, for which he is entitled to an award of damages.

133. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, as well as physical injury, for which he is entitled to an award of damages.

134. Defendants' unlawful and retaliatory actions constitute malicious, willful, and wanton violations of Section 1981, for which Plaintiff is entitled to an award of all remedies available under Section 1981.

## <u>COUNT IV</u>
*(Punitive Damages and Expenses of Litigation)*

135. Plaintiff incorporates herein by reference paragraphs 1 through 134 of this Complaint.

136. The actions of Defendants complained of herein evidence such willful misconduct, wantonness, malice, oppression, and an entire want of care which would raise a presumption of conscious indifference to the consequences thereof. Such conduct was committed in reckless

indifference to Plaintiff's federally protected right so as to make appropriate the imposition of punitive damages on the Defendants.

137.    An award of reasonable attorneys' fees and costs expended by Plaintiff in the prosecution of this civil action is also appropriate in accordance with Title VII and Section 1981.

**PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, it is specifically requested that this Court grant Plaintiff judgment as follows:

A.      On Plaintiff's Count I, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $1,000,000.00;

B.      On Plaintiff's Count II, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $1,000,000.00;

C.      On Plaintiff's Count III, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $1,000,000.00;

D.       Awarding Plaintiff, the costs and disbursements of this action, including reasonable attorneys' fees, together with such other and further relief as this court deems equitable, proper, and just.

Dated: Washington, DC
         October 18, 2023

                                        Respectfully submitted,

                                        _____/s/_____
                                        Lucrecia P. Johnson, Esq., (Fed Bar 18533)
                                        LPJ LEGAL PLLC
                                        700 Pennsylvania Avenue SE, 2nd Floor

Washington, DC 20003
Office: (202) 643-6211
lucrecia@lpjlegal.com


_____/s/_____
Megan S. Goddard, Esq. (*Pro Hac Vic Pending*)
GODDARD LAW PLLC
39 Broadway, Suite 1540
New York, New York 10006
Office: (646) 964-1178
Megan@goddardlawnyc.com

Attorneys for Plaintiff