**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| NOAH PERRY,<br><br>                         Plaintiff,<br><br>v.<br><br>MOM'S ORGANIC MARKET, INC., *et al.*,<br><br>                     Defendants. | Civil Action No. 8:23-cv-02823-TJS |

<u>**MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION TO DISMISS**</u>

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND ................................................................................2

LEGAL STANDARD ...........................................................................................4

ARGUMENT ........................................................................................................5

I.    PERRY'S TITLE VII DISCRIMINATION CLAIM AGAINST MOM'S
      SHOULD BE DISMISSED WITH PREJUDICE................................................6

      A.    Perry's Disparate Treatment Theory Fails................................................6

            1.    Perry Does Not Allege Any Gender or Sex-Based Adverse
                  Employment Action Against Him ...........................................7

            2.    Perry Does Not Allege Facts Regarding Any Similarly
                  Situated Individual of a Different Sex or Gender ....................8

      B.    Perry's Disparate Impact Theory Fails .....................................................9

      C.    Perry's Hostile Work Environment Theory Fails .................................9

            1.    Perry Fails to Allege Unwelcome Conduct Based on His
                  Status as a White Gay Man ...................................................10

            2.    Perry Fails to Allege Severe or Pervasive Conduct that
                  Altered Any Condition of His Employment ..........................10

II.   PERRY'S TITLE VII AND SECTION 1981 RETALIATION CLAIMS
      SHOULD BE DISMISSED WITH PREJUDICE..............................................12

      A.    Perry Fails to Allege he Engaged in "Protected Activity"..................12

      B.    Perry Fails to Allege a "Materially" Adverse Employment Action .................14

            1.    Perry Fails to Allege a "Materially" Adverse Employment
                  Action as to MOM's ...............................................................15

            2.    Perry Fails to Allege a "Materially" Adverse Employment
                  Action as to Defendant May ..................................................17

            3.    Perry Fails to Allege a Materially Adverse Employment
                  Action as to Defendant McCallum ........................................18

      C.    Perry Fails to Allege a Causal Connection Between His
            Complaints of Discrimination and Any Materially Adverse
            Employment Action...............................................................20

            1.    Perry Fails to Allege a Causal Connection Between His
                  Complaints of Discrimination and Any Materially Adverse
                  Employment Action as to Defendant MOM's .........................21

            2.    Perry Fails to Allege a Causal Connection Between His
                  Complaints of Discrimination and Any Materially Adverse
                  Employment Action as to Defendant May...............................21

3.      Perry Fails to Allege a Causal Connection Between His Complaints of Discrimination and Any Materially Adverse Employment Action as to Defendant McCallum...................................22

III.    PERRY'S CLAIM FOR PUNITIVE DAMAGES AND EXPENSES OF LITIGATION IS IMPROPER AND SHOULD BE DISMISSED.................................23

CONCLUSION.........................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ali v. BC Architects Engineers, PLC*,
   832 F. App'x 167 (4th Cir. 2020), *as amended* (Oct. 16, 2020) .............................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................................................5, 9, 23

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................4, 5

*Benton v. Burns*,
   PJM-15-2126, 2017 WL 491251 (D. Md. Feb. 7, 2017) .......................................................17

*Biggs v. Eaglewood Mortg., LLC*,
   582 F. Supp. 2d 707 (D. Md. 2008) .......................................................................................23

*Boyer-Liberto v. Fontainebleau Corp.*,
   786 F.3d 264 (4th Cir. 2015) ..................................................................................................12

*Brennan v. Deluxe Corp.*,
   361 F. Supp. 3d 494 (D. Md. 2019) ..........................................................................................6

*Bristow v. Daily Press, Inc.*,
   770 F.2d 1251 (4th Cir. 1985) ................................................................................................14

*Bryant v. Aiken Reg'l Med. Ctrs. Inc.*,
   333 F.3d 536 (4th Cir. 2003) ..................................................................................................12

*Burlington N. & Santa Fe Ry. Co. v. White*,
   548 U.S. 53 (2006) .......................................................................................................12, 14, 17

*Carter v. Ball*,
   33 F.3d 450 (4th Cir. 1994) ........................................................................................14, 16, 17

*Cepada v. Bd. of Educ. of Baltimore Cnty.*,
   814 F. Supp. 2d 500 (D. Md. 2011) ..................................................................................12, 16

*Chika v. Plan. Rsch. Corp.*,
   179 F. Supp. 2d 575 (D. Md. 2002) ........................................................................................19

*Coleman v. Md. Ct. of Appeals*,
   626 F.3d 187 (4th Cir. 2010) ....................................................................................................7

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
  140 S. Ct. 1009 (2020) (applying "but-for" causation standard to Section 1981
  claims) ...................................................................................................................................12

*Evans v. Int'l Paper Co.*,
  936 F.3d 183 (4th Cir. 2019) ...............................................................................................14

*Exxon Corp. v. Yarema*,
  516 A.2d 990 (Md. App. 1986).............................................................................................23

*Faulkenberry v. U.S. Dep't of Def.*,
  No. 1:22-CV-01150-JMC, --- F. Supp. 3d ---, 2023 WL 3074639
  (D. Md. Apr. 25, 2023) .........................................................................................9, 10, 11, 13

*Finnegan v. Dep't of Pub. Safety & Corr. Servs.*,
  184 F. Supp. 2d 457 (D. Md. 2002) .....................................................................................18

*Gaines v. Baltimore Police Dep't*,
  657 F. Supp. 3d 708 (D. Md. 2023) ........................................................................................8

*Green v. Brennan*,
  578 U.S. 547 (2016)..............................................................................................................15

*Green v. H & R Block*,
  981 F. Supp. 951 (D. Md. 1997) ..........................................................................................23

*Hooten v. Walmart Inc.*,
  No. 5:20-CV-697-BO, 2021 WL 1234507 (E.D.N.C. Apr. 1, 2021) ....................................11

*Lindsey-Grobes v. United Airlines, Inc.*,
  No. GJH-14-00857, 2014 WL 5298030 (D. Md. Oct. 14, 2014) ....................................19, 22

*Matvia v. Bald Head Island Mgmt., Inc.*,
  259 F.3d 261 (4th Cir. 2001) ...............................................................................................16

*Milo v. CyberCore Techs., Inc.*,
  No. RDB-18-3145, 2019 WL 4447400 (D. Md. Sep. 17, 2019) ...........................................11

*Munday v. Waste Mgmt. of N. Am., Inc.*,
  126 F. 3d 239 (4th Cir. 1997) ........................................................................................16, 17

*Netter v. Barnes*,
  908 F.3d 932 (4th Cir. 2018) ...............................................................................................13

*Ofoche v. Apogee Med. Grp., Va., P.C.*,
  815 F. App'x 690 (4th Cir. 2020) ..............................................................................15, 16, 17

iv

*Pa. State Police v. Suders*,
    542 U.S. 129 (2004) ........................................................................................15

*Ricci v. DeStefano*,
    557 U.S. 557 (2009) ..........................................................................................9

*Roberts v. Glenn Indus. Grp., Inc.*,
    998 F.3d 111 (4th Cir. 2021) .......................................................................21, 22

*Short v. Berryhill*,
    No. CV ELH-18-2714, 2019 WL 4643806 (D. Md. Sept. 24, 2019) ...............18, 20

*Skipper v. Giant Food Inc.*,
    68 F. App'x 393 (4th Cir. 2003) ....................................................................13

*Staggers v. Becerra*,
    No. CV ELH-21-0231, 2021 WL 5989212 (D. Md. Dec. 17, 2021) .....................18

*Terry v. Perdue*,
    JKB-18-31, 2018 WL 4494883 (D. Md. Sept. 19, 2018) .................................16

*Thorn v. Sebelius*,
    766 F. Supp. 2d 585, 598 (D. Md. 2011), *aff'd*, 465 F. App'x 274 (4th Cir.
    2012) (per curiam) ........................................................................................20

*Tom v. Montgomery Cnty. Pub. Sch.*,
    No. CV 20-3386 PJM, 2021 WL 1720851 (D. Md. Apr. 30, 2021) ...................19

*U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*,
    707 F.3d 451 (4th Cir. 2013) ..........................................................................5

*Univ. of Tex. SW Med. Ctr. v. Nassar*,
    570 U.S. 338 (2013) ......................................................................................12

*Wag More Dogs, LLC v. Cozart*,
    680 F.3d 359 (4th Cir. 2012) ...........................................................................5

*Walters v. McMahen*,
    684 F.3d 435 (4th Cir. 2012) ...........................................................................5

*Watson v. Virginia Dep't of Agric. & Consumer Servs.*,
    No. 3:19-CV-466, 2020 WL 1237012 (E.D. Va. Mar. 13, 2020), *aff'd,* No. 21-
    1337, 2022 WL 4244506 (4th Cir. Sept. 15, 2022) .........................................19

**Statutes**

42 U.S.C. §§ 2000e, *et seq.* ..................................................................... *passim*

42 U.S.C. § 2000e-2(k) ...................................................................................9

42 U.S.C. § 2000e-3(a) ...............................................................................................13

**Rules**

Fed. R. Civ. P. 8 .............................................................................................................8

Fed. R. Civ. P. 12 ...........................................................................................................8

Fed. R. Civ. P. 12(b)(6) ..................................................................................................1

Defendants MOM's Organic Market, Inc. ("MOM's"), Stacie May, and Lara McCallum[1] (collectively "Individual Defendants,"[2] with MOM's "Defendants"), respectfully submit this Memorandum of Law in Support of their Renewed Motion to Dismiss the Complaint.[3]

## INTRODUCTION

On April 22, 2021, Plaintiff Noah Perry decided to voluntarily quit his job, a mere three days after petty conduct he labels as retaliation began. He now blames his resignation decision on not only MOM's, but on three MOM's managers, whom he has named as individual Defendants in this federal lawsuit.

Perry filed suit on October 18, 2023,[4] alleging claims against MOM's for gender, sex and sexual orientation discrimination (Count I) and retaliation (Count II) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*; and against MOM's and the Individual Defendants for retaliation in violation of Section 1981 of the Civil Rights Act of 1866 (Count III); and for "Punitive Damages and Expenses of Litigation" (Count IV) (the "Complaint"). Defendants seek dismissal of all counts pursuant to Federal Rule of Civil Procedure 12(b)(6).

Perry first asserts MOM's discriminated against him on the basis of his gender, sex, and sexual orientation. To that end, Perry advances three distinct theories of discrimination in a scattershot attempt to locate liability wherever it may be found. He fails to do so. His disparate treatment theory of relief fails for want of allegations plausibly pleading an adverse employment action and different treatment from a similarly situated employees outside his protected class. His

---

[1] Defendant McCallum's first name is Lara, not Laura as plead in the Complaint.

[2] Kyle Young is also named in his individual capacity. Although Perry fails to satisfy his pleading burden as to Mr. Young, this Firm does not represent Mr. Young, and so does not move on his behalf.

[3] The Court denied Defendants' initial Motion to Dismiss, ECF 15, without prejudice pursuant to the Case Management Order, ECF 4.  Defendants now renew their Motion as the Clerk has reassigned the case.

[4] Perry filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 11, 2022. ECF 1 (hereinafter "Compl."), ¶ 18. Perry received a Right to Sue notice on July 26, 2023. *Id.*

disparate impact theory fails for want of an employment practice causing any disparate impact. And his hostile environment theory fails as he does not allege sufficient *facts* that plausibly support a reasonable inference that he experienced unwelcome conduct based on his protected characteristics *or* that such conduct was so severe or pervasive that it altered the conditions of his employment.

Perry's retaliation claims are no sounder. Incredibly, the basis for Perry's federal law retaliation claims against these three individuals (as well as against MOM's) is random, petty conduct he alleges occurred over the course *of only three days*—between April 19 and April 22, 2021—and which he claims is sufficient to plead retaliatory constructive discharge. But petty slights, let alone only three days of such conduct, do not suffice to state a retaliation claim. Perry's claims thus fail at the motion to dismiss stage, as to all Defendants, and indeed Plaintiff's inclusion of three individual managers as named Defendants in this case appears to be no more than a naked attempt to embarrass and harass those individuals.

Finally, Count IV for "Punitive Damages and Litigation Expenses should be dismissed as it is not an independent cause of action under either Maryland or federal law.

In sum, dismissal with prejudice is warranted on all counts.

## FACTUAL BACKGROUND

Perry's Complaint arises from his tenure as an "Associate/Team Member" at MOM's College Park location, a role he held from February 2020 until his April 2021 resignation. Compl. ¶¶ 1, 20. Perry alleges that a hostile work environment was apparent to him "immediately after [he] started working at [MOM's]." *Id.* ¶ 24. As relevant here, he alleges two MOM's employees, neither of whom are parties to this lawsuit, made discriminatory comments, including refusing to

use non-gendered pronouns, saying they only believed in two genders, and questioning which restrooms transgender individuals should be using. *See* Compl. ¶¶ 37-41.[5]

Finally, after fourteen months at MOM's, Perry alleges he complained twice to a colleague, Imani Newcomer, in April 2021. *See* Compl. ¶ 92-94.[6] Perry does not allege that he complained to Defendant Young, to Newcomer, or anyone else about Defendant Young's conduct (which he describes at length, *see* Compl. ¶¶ 56-60). Instead, Perry alleges only that he complained to Newcomer about Defendant May and another manager, "Brittany."[7] Perry alleges generally that on April 15, 2021, he complained to Newcomer about "discriminatory comments and behaviors" by Defendant May and Brittany, including "Defendant May's recent racist comments in relation to South Asian (Indian) and Asian-American customers." Compl. ¶¶ 92-93. Perry does not allege any specific complaints he shared regarding Brittany on April 15. *Id.* Perry alleges he again complained to Newcomer on April 18, 2021, that Defendant May was engaged in unwanted touching of him and others (although he does not articulate how he discerned that this was discriminatory), and Brittany making a "Fat Albert" impersonation. *Id.* ¶¶ 94-95.

Perry also alleges that he *once* told Defendant May, also in April 2021, to stop making certain comments that he now labels as racist. *See* Compl. ¶¶ 87-89. But Perry does not allege any connection between this single conversation with Defendant May and the alleged "retaliation" he

---

[5] Perry also generally alleges comments related to race and/or national origin (Compl. ¶¶ 25-36, 46-53), which are of questionable relevance, as they were not aimed at him, and as his hostile environment claim is premised on his "gender, sex, and sexual orientation, *see* Compl. ¶ 117; *see generally* Count I.

[6] Perry consistently refers to Newcomer as "Supervisor Newcomer" in his Complaint, *see, e.g.*, Compl. ¶¶ 92-97, 107-110, but alleges that she was a "Manager in Training" and had been for many years. *See* Compl. ¶ 57. The Complaint plainly distinguishes between "Supervisor Newcomer" (*See e.g.* Compl. ¶¶ 22-23, 57, 60, 72, 75-76, 92-97, 107-110) and the Individual Defendants and other managers (*See, e.g.*, Compl. ¶¶ 22-23). The Complaint alleges that Newcomer should have been promoted to a manager-level position, but was not. *See* Compl. ¶ 57. MOM's does not concede that Newcomer was a manager such that complaints to her of allegedly discriminatory conduct imputed knowledge to MOM's. Perry nevertheless pleads Newcomer had supervisor liability, *see* Compl. ¶ 23, and thus that factual dispute is not ripe for the Court's consideration at this stage.

[7] Plaintiff does not plead "Brittany's" last name. *See* Compl. ¶ 22.

experienced, instead alleging the retaliation campaign against him "began" immediately following his April 2021 complaints to Newcomer. *See* Compl. ¶ 97. That is, the Complaint identifies April 19, 2021, as the specific date on which he *first experienced* any retaliation. *Id.* The entire list of retaliatory acts Perry alleges are as follows:

- As to Defendant May, Perry alleges that she started to ignore him and glared at him. Compl. ¶ 98. Perry further alleges that Defendants May and Young tried to get him to sign a document falsely saying he had multiple write-ups (Compl. ¶ 105).

- As for Defendant McCallum, Perry alleges she came to the store and "for more than an hour followed [him] around while glaring at him in an intimidating way" (Compl. ¶ 99), told him he could not listen to music while stocking shelves (Compl. ¶ 100), and reprimanded him "in an unreasonably harsh manner" for his shirt being "lifted up" when he was stocking a shelf (Compl. ¶ 102).

- As for Defendant Young, Perry alleges that he wrongly told Perry he would be written up for excessive tardiness (Compl. ¶ 103), and that on one occasion Defendant Young denied a schedule change request (Compl. ¶ 106).

Perry alleges no other conduct to support his retaliation-by-constructive-discharge claim.

Perry alleges that he "felt forced to resign" on April 22, 2021 because of a "hostile work environment" and "blatant retaliation". Compl. ¶ 111. He decided to resign on the same day he allegedly learned about the end of Newcomer's employment with MOM's (*id.* at ¶ 107), three days after the alleged retaliation "began" on April 19 (*id.* at ¶ 97). He further alleges, without specificity, that he reported to MOM's "many of the unlawful things that he had witnessed" during his exit interview, after he resigned. *Id.* ¶ 112.

## LEGAL STANDARD

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts

to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

Perry's claims are fatally flawed. He premises his Title VII discrimination claim against MOM's (Count I) on three theories—disparate treatment, disparate impact, and hostile work environment—each of which are deficient. First, as to disparate treatment, Perry fails to allege both any adverse employment action and a similarly situated employee outside his protected class treated more favorably. Second, as to disparate impact, Perry neglects to plead any employment practice causing a disparate impact that he "suffered." And third, his hostile environment theory is deficiently plead as he fails to allege unwelcome conduct based on his protected traits, much less conduct so severe or pervasive such that it altered the conditions of his employment.

Turning to his Title VII and Section 1981 retaliation claims (Counts II and III, respectively), Perry does not allege facts showing a "materially" adverse employment action, nor any causal link between his alleged adverse employment action (his constructive discharge) and

his alleged opposition to discrimination. Finally, Perry's claim for punitive damages (Count IV) fails as it is not a standalone cause of action under Maryland or federal law.

## I.   PERRY'S TITLE VII DISCRIMINATION CLAIM AGAINST MOM'S SHOULD BE DISMISSED WITH PREJUDICE

As noted above, in support of his Title VII claim against MOM's, Perry posits three fatally flawed theories of discrimination on the basis of his gender, sex, and sexual orientation: disparate treatment, disparate impact, and hostile environment. Perry's disparate treatment theory fails as he does not allege any adverse action—a deficiency that additionally precludes him from identifying any similarly situated individual of a different gender, sex, and sexual orientation who did *not* suffer such adverse action. As for disparate impact, he fails to plead the essence of the theory: that MOM's uses a particular employment practice that causes a disparate impact on "white gay [men]" like him. Compl. ¶ 20. Perry's hostile environment theory is similarly deficient, as he does not allege sufficient *facts* that plausibly support a reasonable inference that he suffered unwelcome conduct based on his protected characteristics, much less that he suffered any such conduct so severe or pervasive that it altered the terms or conditions of his employment.

In sum, Perry fails to state a Title VII discrimination claim against MOM's regardless of the theory applied. MOM's respectfully requests that the Court dismiss Perry's Title VII discrimination claim (Count I) with prejudice.

### A.   Perry's Disparate Treatment Theory Fails

In order to state a viable claim for disparate treatment, a plaintiff must allege sufficient facts to plausibly show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 506 (D. Md. 2019) (citing

*Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)). Perry fails to plead the latter two elements.[8]

Although Perry alleges he is a "white gay man," Compl. ¶ 20, and alleges discrimination on the basis of his gender, sex, and sexual orientation, *see* Compl. ¶ 117, he does not allege any gender or sex-based adverse action against him, and thus cannot—and does not—identify any similarly situated individual treated more favorably. Accordingly, his disparate treatment theory fails to advance his Title VII discrimination claim against MOM's.

### 1.      Perry Does Not Allege Any Gender or Sex-Based Adverse Employment Action Against Him

Fatal to Perry's disparate treatment theory is that he fails to allege any gender or sex-based adverse action against him. Perry alleges multiple instances where he "was made to feel extremely uncomfortable" by discriminatory comments regarding gender non-confirming individuals, which he attributes to two non-parties, "Brittany" and Reina Hernandez.[9] *See* Compl. ¶ 37, 41. He alleges, for example, that Brittany refused to use pronouns other than "gender binary male and female pronouns," made other unspecified, gender-based comments, "appeared disgusted by the concept of transgender people," said she only believed in two genders, and that Hernandez twice said, in reference to transgender individuals, that she did not understand why "men" had to use restrooms meant for "women." Compl. ¶¶ 37-41. Perry alleges no other gender or sex-based comments or conduct.[10]

---

[8] Perry arguably satisfies the second element at the pleading stage, as he alleges he "received excellent feedback from his supervisors, who told him he was a hard-working and conscientious employee." Compl. ¶ 55. MOM's denies this allegation as Perry's employment file tells a different story. Nevertheless, this factual dispute is not ripe for the Court at this time.

[9] Perry alleges Hernandez was the General Manager when he was hired, later replaced by Defendant Young. *See* Compl. ¶¶ 22, 43.

[10] Perry later alleges, on information and belief, that MOM's "has a pattern and practice of not promoting or providing equal pay…especially [to] female workers of color." Compl. ¶ 61. Not only does Perry allege no facts to

None of this conduct suffices to state a gender or sex-based adverse employment action.[11] *Gaines v. Baltimore Police Dep't*, 657 F. Supp. 3d 708, 735 (D. Md. 2023) (granting motion to dismiss and stating that "[a]n adverse employment action is one that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits") (cleaned up). Feeling "extremely uncomfortable" or even "deeply offended," *see* Compl. ¶¶ 39-40, is not enough. *Gaines*, 657 F. Supp. 3d at 735. Perry's disparate treatment theory thus fails.

### 2.   Perry Does Not Allege Facts Regarding Any Similarly Situated Individual of a Different Sex or Gender

Perry's disparate treatment theory is doubly deficient. As he does not allege any gender or sex-based adverse action against him, Perry cannot—and does not—allege any similarly situated individual outside his protected class who was treated more favorably. To the extent the Complaint addresses this requirement at all, Perry alleges MOM's "treated him differently from, and less preferably than, similarly-situated non gay/lesbian/bisexual/transgender individuals on the basis of his gender, sex, and sexual orientation in violation of the law." Compl. ¶ 118. But he never explains how he was treated differently, or who these similarly situated individuals are. Perry cannot proceed on such a cursory recitation of his claim. Federal Rules of Civil Procedure 8 and 12 demand more.

---

support this plainly conclusory allegation, but it is of no moment here, as Perry pleads he is a "white gay man," *not* a woman of color. *See* Compl. ¶ 20.

[11] To the extent Perry pleads an adverse action, it is that he was constructively discharged. *See infra* Part II. But Perry's constructive discharge—which, as discussed below in the context of Perry's retaliation claims, he fails to sufficiently allege—cannot support his disparate treatment theory of discrimination, as he expressly pleads he was constructively discharged *in retaliation for his complaints to Newcomer*, rather than on the basis of his sex or gender. *See* Compl. ¶¶ 123, 131.

### B. Perry's Disparate Impact Theory Fails

Perry next advances a disparate impact theory. This too fails. To prevail on a disparate impact discrimination theory, Perry must "demonstrate[] that a respondent uses a particular employment practice that causes a disparate impact on the basis of [sex] and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity[.]" 42 U.S.C. § 2000e-2(k). Thus, a disparate impact claim requires that the "employer uses a particular employment practice that causes a disparate impact[.]" *Ricci v. DeStefano*, 557 U.S. 557, 578 (2009).

Perry identifies no such practice. Nor does he specify the "disparate impact" *he* allegedly "suffered." Compl. ¶ 117. The Court and MOM's are left to guess. Such a conclusory recitation of the elements of the claim, divorced from any factual underpinning, is a quintessential example of a pleading that fails to state a claim. *Iqbal*, 556 U.S. at 678 (holding that "an unadorned, the-defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss). Perry's disparate impact theory falls far short of advancing his Title VII claim.

### C. Perry's Hostile Work Environment Theory Fails

The third theory on which Perry premises his discrimination claim is that MOM's subjected him to a hostile environment on the basis of his gender, sex, and sexual orientation. *See* Compl. ¶ 117. But like Perry's other theories, this one, too, is fatally flawed. The elements of a Title VII claim for hostile work environment are "(1) unwelcome conduct; (2) that is based on [a protected status]; (3) which is sufficiently severe or pervasive to alter … conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Faulkenberry v. U.S. Dep't of Def.*, No. 1:22-CV-01150-JMC, --- F. Supp. 3d ---, 2023 WL 3074639, at *10 (D. Md. Apr. 25, 2023). Although Perry arguably alleges unwelcome conduct, he fails to sufficiently plead the second or third elements.

1.      **Perry Fails to Allege Unwelcome Conduct Based on His Status as a White Gay Man**

Perry fails to allege any unwelcome conduct based on his status as a "white gay man." Compl. ¶ 20. To the extent Perry alleges such conduct, he says he overheard discriminatory comments regarding transgender and gender non-conforming individuals. *See* Compl. ¶¶ 37-41. Setting aside that Perry does not allege he is a transgender or gender non-conforming individual, he also does not allege that such comments were made in his presence *because of* his protected characteristics. Nor does he allege such comments were directed at him. To the contrary, Perry specifically pleads that Brittany "went out of her way to make clear *to all* that she" objected to the use of gender non-conforming pronouns. Compl. ¶ 37 (emphasis added). Perry further alleges that Brittany "openly" espoused discriminatory views and that Hernandez on two occasions made discriminatory comments to "a large group of store employees." *See* Compl. ¶¶ 39, 41. Perry's allegations thus underscore that this "unwelcome conduct" was in no way tied to *his* protected traits.

2.      **Perry Fails to Allege Severe or Pervasive Conduct that Altered Any Condition of His Employment**

Perry also fails to allege conduct sufficiently severe or pervasive such that it altered the conditions of his employment—a must to maintain his claim. The severe or pervasive element "sets a high bar." *Faulkenberry*, 2023 WL 3074639, at *10 (explaining that "the law tolerates a level of poor conduct by an employer that is at odds with the courtesy and respect that an employee might not unreasonably expect"). "Indeed, even the utterance of an epithet may not, on its own, be enough to alter the conditions of employment under Title VII." *Id.* (citation omitted).

Perry's allegations fail to meet this "high bar." He alleges only "offhand comments and isolated incidents ([that] unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment[.]" *Id.* As noted above, he specifically pleads only "two

separate occasions" when he allegedly heard Hernandez make discriminatory remarks. *See* Compl. ¶ 41. And although he alleges Brittany "regularly" made such comments, that does not plausibly suggest that a reasonable person in his position would have deemed the work environment "permeated with discriminatory intimidation, ridicule, and insult." *Faulkenberry*, 2023 WL 3074639, at *10 (citations and internal quotation marks omitted). Frequency alone is not enough to plead a hostile environment. *Id.* ("The circumstances a court considers in determining whether the alleged conduct is objectively hostile include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.") (quotations omitted).

Three recent cases brought by transgender women against their employers support dismissing Perry's Title VII discrimination claim. Plaintiffs in each case alleged they were mis-gendered (or referred to as "it"), and that managers ignored such conduct, while applying disciplinary policies to plaintiffs more harshly, and generally unfairly reprimanding and mistreating plaintiffs. *Compare Faulkenberry*, 2023 WL 3074639, at *11 *with Hooten v. Walmart Inc.*, No. 5:20-CV-697-BO, 2021 WL 1234507, *3 (E.D.N.C. Apr. 1, 2021) *and Milo v. CyberCore Techs., Inc.*, No. RDB-18-3145, 2019 WL 4447400, *2 (D. Md. Sep. 17, 2019). One plaintiff also alleged that a co-worker told plaintiff they "hated" transgender people. *Milo*, 2019 WL 4447400, at *2. The courts in all three cases dismissed plaintiffs' hostile environment claims, finding the conduct not severe or pervasive enough to plausibly describe a hostile environment—even when attributable to a supervisor. *See Faulkenberry*, 2023 WL 3074639, at *11, *Hooten*, 2021 WL 1234507, at *3; *Milo*, 2019 WL 4447400, at *6. That transgender plaintiffs failed to state hostile environment claims premised on comments *directed at them* and far more hateful than those

Perry—a "white gay man"—alleges he merely overheard regarding individuals in a protected class to which he does not belong dooms Perry's claim.

Even had Perry alleged facts that plausibly support severe or pervasive conduct, glaringly absent from his complaint is any allegation of how that conduct altered any of the conditions of his employment. Absent such allegations, his hostile work environment theory collapses.

In sum, dismissal of Perry's Title VII discrimination claim against MOM's is warranted regardless of the theory of discrimination on which he relies.

## II.   PERRY'S TITLE VII AND SECTION 1981 RETALIATION CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

Perry's retaliation claims—specifically premised on *three days'* of allegedly retaliatory conduct consisting of little more than being "glared" at and being held to standard MOM's policies, which he says forced him to resign, *see* Compl. ¶¶ 97-106—fail on their face.

An actionable retaliation claim under Title VII or Section 1981[12] requires Perry to allege: (1) protected activity; (2) "materially" adverse employment action; and (3) a causal connection between the protected activity and materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006); *Bryant v. Aiken Reg'l Med. Ctrs. Inc.,* 333 F.3d 536, 543 (4th Cir. 2003); *Cepada v. Bd. of Educ. of Baltimore Cnty.*, 814 F. Supp. 2d 500, 514–15 (D. Md. 2011). Perry fails to allege facts supporting any elements of his retaliation claims.

### A.   Perry Fails to Allege he Engaged in "Protected Activity"

Perry's complaint stumbles at the threshold, as he fails to sufficiently plead that he engaged in "protected activity." To constitute protected opposition activity, Perry must allege (1) that he

---

[12] "A retaliation claim under 42 U.S.C. § 1981 has the same elements[]" as a retaliation claim under Title VII. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015). Both require "but-for" causation. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (applying "but-for" causation standard to Section 1981 claims); *Univ. of Tex. SW Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (holding that "Title VII retaliation claims must be proved according to traditional principles of but-for causation").

reasonably believed that the employment action opposed was unlawful, and (2) that his conduct in opposition was reasonable. *Netter v. Barnes*, 908 F.3d 932, 937-38 (4th Cir. 2018); *see also* 42 U.S.C. § 2000e-3(a) (barring retaliation for "oppos[ition] to any practice made an unlawful employment practice by this subchapter").  Perry's pleadings fall far short.

Perry does not—and cannot—allege that he *reasonably believed* his complaints to Newcomer opposed an *unlawful* employment practice. Rather, he alleges he complained to Newcomer about: "discriminatory comments and behaviors," "recent racist comments in relation to South Asian (Indian) and Asian-American customers," Defendant May "inappropriately touching many women of color" and him, and Brittany's "Fat Albert" impression and discriminatory comments against transgender individuals. *See* Compl. ¶¶ 92-95.

Key to this analysis is whether Perry has sufficiently pled an unlawfully hostile work environment about which he complained. Perry does not remotely approach pleading an actionable hostile work environment. *Faulkenberry*, 2023 WL 3074639, at *10 ("The elements of a Title VII claim for hostile work environment are: '(1) unwelcome conduct; (2) that is based on [a protected status]; (3) which is sufficiently severe or pervasive to alter ... conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer."); *see also* Part I.C. For example, Perry at a minimum fails to plead that this conduct was so severe or pervasive that it altered the conditions of employment. *Skipper v. Giant Food Inc.*, 68 F. App'x 393, 399 (4th Cir. 2003) (Plaintiff's daily exposure to racist graffiti in the workplace and allegations of use of racial epithets was insufficient to substantiate a hostile work environment claim because of the lack of specificity as to context, frequency, and how the hostile act altered the terms and conditions of their employment.). Perry's allegations about his underlying "complaints" to Newcomer thus show neither subjectively unlawful conduct, nor support an

13

objectively reasonable belief that unlawful conduct occurred. Accordingly, his retaliation claims fail.

### B.      Perry Fails to Allege a "Materially" Adverse Employment Action

Perry fails to allege any "materially" adverse employment action, in that he attempts to allege "constructive discharge" without providing *any* allegations which would allow the Court to conclude that his separation from MOM's was anything but a voluntary resignation. This does not satisfy the required element of the claim.

To establish that Defendants' actions were sufficiently adverse to support a retaliation claim, a Plaintiff must allege facts sufficient to allow an inference "that a reasonable employee would have found the challenged action[s] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (internal quotation marks and citations omitted). An action is not materially adverse, however, if it amounts to nothing more than the "petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*

The materially adverse employment action upon which Perry relies is constructive discharge. But he fails to allege facts as to MOM's or as to any of the Individual Defendants that support an inference that he suffered a work environment so hostile and retaliatory—in the *three days* between when the retaliation allegedly began and when he decided to resign—that he was forced to resign. *See Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994) (affirming motion to dismiss and noting that "[a] constructive discharge occurs when an employer creates intolerable working conditions in a deliberate effort to force the employee to resign"); *see also Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985) ("Deliberateness exists only if the actions complained of were intended by the employer as an effort to force the employee to quit."). And his allegations specific to each of the Individual Defendants are glaringly deficient. *Evans v. Int'l Paper Co.*, 936

14

F.3d 183, 193 (4th Cir. 2019) (noting that the level of intolerability required to state a claim of constructive discharge is higher than the showing required for a hostile work environment claim (citing *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004)).

### 1. Perry Fails to Allege a "Materially" Adverse Employment Action as to MOM's

The materially adverse employment action Perry alleges against MOM's is constructive discharge. *See* Compl. ¶¶ 123, 131. To establish constructive discharge, however, he must meet a high standard. *See Ofoche v. Apogee Med. Grp., Va., P.C.*, 815 F. App'x 690, 692 (4th Cir. 2020) (affirming dismissal of retaliation claim premised on constructive discharge). Perry must allege facts demonstrating that he resigned and "'that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign.'" *Id.* (quoting *Green v. Brennan*, 578 U.S. 547, 555 (2016)). It is axiomatic that this high standard is even more challenging to reach where, as here, the alleged retaliation campaign began a mere three days before his decision to resign. *See* Compl. ¶ 97.

That the retaliation campaign allegedly "began" on April 19 means it is only subsequent conduct that should be considered when analyzing whether Perry sufficiently pled facts in support of his retaliatory constructive discharge claims against MOM's.[13] But Perry's allegations regarding that post-April 19 conduct fall far short of pleading constructive discharge. Rather, they are of the ilk widely recognized as insufficient to show working conditions so intolerable that a reasonable person would have felt compelled to resign. As to Defendant McCallum, Perry alleges that "a few days after" his April 15 and 18 complaints, Defendant McCallum came to the store and "for more than an hour followed [him] around while glaring at him in an intimidating way," told him he

---

[13] Perry's discrimination claim (Count I), addressed at *supra* Part I, could rely on allegations related to general workplace conditions prior to April 19, when the retaliatory conduct began, but such conduct cannot be considered for the retaliation claims, in light of Perry's plain pleading that the retaliation began on April 19, 2021.

could not listen to music while stocking shelves although other employees frequently did so, and criticized his shirt. Compl. ¶¶ 99-101. But "[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.'" *Ofoche*, 815 F. App'x at 692 (quoting *Carter*, 33 F.3d at 459).

Nor do Perry's allegations regarding Defendants May and Young's conduct between April 19 and 22, 2021, support a constructive discharge allegation. Perry alleges only that after his complaints to Newcomer, Defendants May and Young started to ignore him, tried to get him to sign a document falsely saying he had multiple write-ups, and that Defendant Young wrongly tried to (but ultimately *did not*) write him up for tardiness and on one occasion denied a schedule change request normally routinely granted. Compl. ¶¶ 98, 103, 105, 106. Setting aside that deciding *not* to discipline Perry for tardiness plainly is not materially adverse action,[14] co-worker ostracization and discipline related to time cards is conduct widely recognized as insufficient to compel a reasonable person to resign. *See, e.g.*, *Matvia v. Bald Head Island Mgmt., Inc*., 259 F.3d 261, 273 (4th Cir. 2001) (company's failure to address co-worker ostracism, denial of a management position and mandatory counseling for turning in an inaccurate time card would not have compelled a reasonable person to resign); *Munday v. Waste Mgmt. of N. Am., Inc*., 126 F. 3d 239, 244 (4th Cir. 1997) (Manager yelling at plaintiff during meeting, directing other employees to ignore plaintiff and to spy on her, and refusing to act upon, or to communicate with plaintiff about, employment-related complaints "do[ ] not rise to the level of an adverse employment action."); *see also Terry v. Perdue*, JKB-18-31, 2018 WL 4494883, at *6 (D. Md. Sept. 19, 2018) (holding

---

[14] *See, e.g.*, *Cepada v*, 814 F. Supp. 2d at 515 ("[Plaintiff's] allegations that he was yelled at . . . and 'criticized' . . . are not materially adverse actions. Nor is [plaintiff's] allegation that the school *threatened* to officially reprimand him. . . .") (emphasis added).

at the motion to dismiss stage that audit of plaintiff's time records did not constitute an adverse employment action); *Benton v. Burns*, PJM-15-2126, 2017 WL 491251, at \*7 (D. Md. Feb. 7, 2017) ("[M]onitoring time and attendance is not an adverse employment action.").

As a whole, Perry fails to allege facts showing that during the three days in question, MOM's undertook a "deliberate effort" to force Perry to resign, *Carter*, 33 F.3d at 459, or that "a reasonable person in [Perry's] position would have felt compelled to resign," *Ofoche*, 815 F. App'x at 692. Perry thus has failed to sufficiently allege a materially adverse employment action as required for his retaliation claims against MOM's.

### 2. Perry Fails to Allege a "Materially" Adverse Employment Action as to Defendant May

Nor does Perry sufficient plead facts to support individual liability under Section 1981. To the contrary, Perry's allegations regarding Defendant May fall far short.

Perry makes only two allegations regarding Defendant May's conduct in response to his April 15 and April 18 complaints to Newcomer. Neither constitute a materially adverse employment action. First, Perry alleges Defendant May "started to ignore [him] and to glare at him menacingly throughout the day." Compl. ¶ 98. But ignoring and glaring at a co-worker is not a materially adverse employment action. *See Munday*, 126 F. 3d at 244; *see also* Part II.B.1. Regardless, Perry in the very next sentence alleges "Defendant May *did* talk to [Perry]" but that when she did so "she was angry and rolled her eyes." Compl. ¶ 98 (emphasis added). This is a quintessential example of the "petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (stating that such conduct is not materially adverse employment action).

Perry next alleges Defendant May "tried to force [Perry] to sign a document that [falsely] said he had multiple write-ups." Compl. ¶ 105. Again, such conduct is not "materially" adverse

employment action—particularly as Perry fails to allege that signing the document would have led to further disciplinary action. *See Finnegan v. Dep't of Pub. Safety & Corr. Servs.*, 184 F. Supp. 2d 457, 461 (D. Md. 2002) (granting motion to dismiss in part as "discipline, without evidence that the verbal reprimands or that a counseling letter could lead to further disciplinary action, such as termination, does not constitute an adverse employment action"); *see also Short v. Berryhill*, No. CV ELH-18-2714, 2019 WL 4643806, at *13 (D. Md. Sept. 24, 2019) (same). Put another way: Perry does not allege how a failed attempt to get him to sign an allegedly false document materially affected the terms and conditions of his employment—because he can make no such connection. The Court should therefor dismiss Perry's retaliation claim (Count III) against Defendant May because he has not made allegations sufficient to make out key elements of the claim.[15]

### 3. Perry Fails to Allege a Materially Adverse Employment Action as to Defendant McCallum

Perry's allegations as to Defendant McCallum are similarly deficient. Perry alleges only that following his complaints to Newcomer, Defendant McCallum came to the MOM's College Park location, followed Perry around while glaring at him (Compl. ¶ 99), told him he could not listen to music while stocking shelves (Compl. ¶ 100), and reprimanded him for his shirt being lifted up (Compl. ¶ 102). None of this alleged conduct constitutes "materially" adverse employment action.

First, "glaring" and "following around" are not materially adverse employment actions. *See Staggers v. Becerra*, No. CV ELH-21-0231, 2021 WL 5989212, at *16 (D. Md. Dec. 17, 2021) (collecting cases) (granting motion to dismiss and observing that "[o]ther judges in this District

---

[15] Perry does not premise his retaliation count against Defendant May on her alleged "unwanted touching." *See generally* Compl. ¶¶ 97-106, 127-134. Again, he specifically alleges that the retaliation "began" on April 19, 2021. Compl. ¶ 97.

have found that close employer monitoring of an employee's activity does not constitute an adverse employment action"); *Lindsey-Grobes v. United Airlines, Inc.*, No. GJH-14-00857, 2014 WL 5298030, at *10 (D. Md. Oct. 14, 2014) (collecting cases) (granting motion to dismiss as plaintiff's allegations of retaliatory monitoring "cannot be classified as materially adverse employment actions"). Moreover, Perry fails to allege facts showing how Defendant McCallum's "glaring" and "following" materially affected the terms or conditions of his employment. *Lindsey-Grobes*, 2014 WL 5298030, at *10 (premising dismissal in part on fact that "nothing in Plaintiff's complaint suggests that any of the alleged monitoring activities caused Plaintiff any injury or harm" as "Plaintiff does not allege that she was denied a promotion, lost pay, or otherwise had her work schedule, duties, or benefits modified as a result of the alleged monitoring"); *Chika v. Plan. Rsch. Corp.*, 179 F. Supp. 2d 575, 586 (D. Md. 2002) (finding that plaintiff failed to show how close monitoring materially changed his employment status, even if possibly frustrating and annoying, and even if giving rise to increased tension or unpleasant personal relationships).

Similarly, Defendant McCallum telling Perry he could not listen to music, allegedly counter to store policy, is not a materially adverse employment action. Perry effectively concedes as much by characterizing McCallum's behavior as "excessive micromanaging," *see* Compl. ¶ 100, a category of conduct routinely found to *not* constitute materially adverse employment action. *See, e.g., Tom v. Montgomery Cnty. Pub. Sch.*, No. CV 20-3386 PJM, 2021 WL 1720851, at *2 (D. Md. Apr. 30, 2021) (granting motion to dismiss as "vague allegations of belittling, harsh criticism, and micromanagement [do not] suffice" to show adverse employment action); *see also Watson v. Virginia Dep't of Agric. & Consumer Servs.*, No. 3:19-CV-466, 2020 WL 1237012, at *3 n.5 (E.D. Va. Mar. 13, 2020), *aff'd,* No. 21-1337, 2022 WL 4244506 (4th Cir. Sept. 15, 2022) ("[Plaintiff's] allegations of micromanagement—warnings, poor performance reviews, and

reprimands—do not constitute adverse employment actions." (citing *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 598 (D. Md. 2011), *aff'd*, 465 F. App'x 274 (4th Cir. 2012) (per curiam) (holding that neither a counseling letter nor a change to a new scheduling system constituted an adverse employment action))).

Nor is it a materially adverse employment action for Defendant McCallum to allegedly reprimand Perry "in an unreasonably harsh manner" for his shirt being "lifted up." Compl. ¶ 102. Reprimands do not constitute materially adverse employment action absent facts showing that they materially affect the terms and conditions of employment. *See Berryhill*, 2019 WL 4643806, at *13 (granting motion to dismiss as "the Fourth Circuit has instructed that reprimands and low performance reviews, without more, do not constitute an adverse action"). Perry alleges no such facts here.

In sum, Perry fails to allege any facts allowing an inference that Defendant McCallum took materially adverse employment action against him. The Court should therefor dismiss Perry's retaliation claim (Count III) against Defendant McCallum.

### C.   Perry Fails to Allege a Causal Connection Between His Complaints of Discrimination and Any Materially Adverse Employment Action

Perry's retaliation claims fail for another reason. Even if he adequately alleges protected activity, and even if he adequately alleges materially adverse employment action, he fails to allege facts connecting his complaints and the April 19-22 conduct, and falls short of pleading that the putatively protected activity was a "but-for" cause of the alleged materially adverse employment action. *Ali v. BC Architects Engineers, PLC*, 832 F. App'x 167, 172–73 (4th Cir. 2020), *as amended* (Oct. 16, 2020) ("[T]o state a § 1981 retaliation claim, a plaintiff must allege facts rendering it plausible that, *but for* her participation in protected activity, she would not have suffered a materially adverse action.") (emphasis added). Perry fails to allege any facts supporting

that "but-for" his complaints to Newcomer MOM's would not have constructively discharged him (although, again, MOM's disputes that Perry was in any way "constructively discharged"). In fact, Perry fails even to allege that Defendants May and McCallum were made aware of his complaints to Newcomer. It therefore defies logic to conclude that any complaint Perry made was in any way connected to any action—real or imagined—taken against him.

1.    **Perry Fails to Allege a Causal Connection Between His Complaints of Discrimination and Any Materially Adverse Employment Action as to Defendant MOM's**

Dismissal of Perry's retaliation claims against MOM's is warranted as he fails to allege that his complaints to Newcomer were the "but-for" cause of MOM's alleged retaliation campaign against him. Perry alleges that on April 15 and 18 he reported "Defendant May's and Manager Brittany's discriminatory comments and behaviors to Supervisor Newcomer." Compl. ¶¶ 92, 94. He further alleges that the retaliation campaign against him "began" on April 19, 2021. *Id.* ¶ 97. But he fails to plead that "the decisionmaker imposing the adverse action" (here Defendants McCallum, Young, and May, whose conduct allegedly led to his constructive discharge) had knowledge of the protected activity imputable to MOM's for purposes of his retaliation claims. *See Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 125 (4th Cir. 2021) (finding that a "prima facie case of retaliation requires that a plaintiff demonstrate that the decisionmaker imposing the adverse action have actual knowledge of the protected activity"). He thus has not alleged retaliatory conduct in response to his putatively protected report of discriminatory conduct.

2.    **Perry Fails to Allege a Causal Connection Between His Complaints of Discrimination and Any Materially Adverse Employment Action as to Defendant May**

Perry fails to allege facts suggesting that "but-for" his complaints to Newcomer, Defendant May would not have retaliated against him. As a threshold matter, Perry fails to allege Defendant May was *ever* made aware of his complaints to Newcomer. Dismissal is warranted on this

deficiency alone, as Defendant May cannot have reacted to something of which she knew naught. *Roberts*, 998 F.3d at 124 (noting that courts in the Fourth Circuit "have consistently required" plaintiffs to "show that the decisionmaker was aware of the protected activity at the time the alleged retaliation occurred").

Dismissal is warranted even *had* Perry alleged Defendant May knew of his complaints, as he alleges no facts establishing a causal link between his complaints and Defendant May's alleged retaliatory conduct. Perry alleges, for example, that Defendant May "started to ignore [him]," *see* Compl. ¶ 98, but alleges no facts showing that this "ignoring" stemmed from his complaint to Newcomer. Similarly, while Perry alleges Defendant May "tried to force [him] to sign a document that said he had multiple write-ups" and that he "understood this to also be in retaliation for his report," Compl. ¶ 105, he alleges no facts showing that to be the case. Perry's retaliation claim against Defendant May thus fails for want of causal link. *Lindsey-Grobes*, 2014 WL 5298030, at *10 (granting motion to dismiss retaliation claim as plaintiff failed to allege facts supporting an inference of a causal connection). "

### 3.    Perry Fails to Allege a Causal Connection Between His Complaints of Discrimination and Any Materially Adverse Employment Action as to Defendant McCallum

Perry similarly fails to allege facts supporting a causal link between his complaint to Newcomer and his allegations regarding Defendant McCallum's conduct. *See* Compl. ¶¶ 99-101. Again, as a threshold matter, Perry fails to allege Defendant McCallum knew of Perry's complaints to Newcomer. But even had Perry so alleged, his retaliation claim against Defendant McCallum fails.

To the extent Perry alleges any causal connection between his complaints and Defendant McCallum's conduct, he states only that as Defendant McCallum followed him around the store "[i]t appeared to [him] that [Defendant McCallum] was waiting for [Perry] to make a mistake so

that she could discipline him in retaliation for complaining of discrimination." Compl. ¶ 99. But Perry alleges no facts showing why or how that "appeared" to him to be the case. And he makes no allegations whatsoever—much less factual ones—showing that Defendant McCallum told him he could not listen to music (Compl. ¶ 100) and reprimanded him for his shirt being lifted up (Compl. ¶ 102) *in retaliation for his complaints* to Newcomer. Absent factual allegations of a causal link between Perry's complaints and the alleged materially adverse employment actions— which in any event does *not* constitute materially adverse employment action—dismissal of Perry's retaliation claims with prejudice is warranted. *Iqbal*, 556 U.S. at 678 (holding that "an unadorned, the-defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss).

## III.    PERRY'S CLAIM FOR PUNITIVE DAMAGES AND EXPENSES OF LITIGATION IS IMPROPER AND SHOULD BE DISMISSED

Dismissal of Perry's claim for "Punitive Damages and Expenses of Litigation" (Count IV) is warranted as there is no freestanding cause of action for punitive damages apart from an underlying cause of action upon which punitive damages can be grounded. This is true both as a matter of federal law, *see e.g. Green v. H & R Block,* 981 F. Supp. 951 (D. Md. 1997), and state law, *e.g. Exxon Corp. v. Yarema,* 516 A.2d 990 (Md. App. 1986). Defendants respectfully request that the Court dismiss Count IV with prejudice. *See Biggs v. Eaglewood Mortg., LLC*, 582 F. Supp. 2d 707, 711 (D. Md. 2008) (dismissing freestanding punitive damages claim *sua sponte*).[16]

## CONCLUSION

For the foregoing reasons, Perry's discrimination and retaliation claims against MOM's under Title VII (Counts I and II) and against MOM's and Defendants May and McCallum under

---

[16] Even were a freestanding claim for punitive damages permissible, Defendants deny that punitive damages are warranted on Perry's allegations, as dismissal of Counts II and III is warranted for the reasons discussed herein, and as he nevertheless fails to specifically plead punitive damages in connection with any of his substantive claims.

Section 1981 (Count III) and for "Punitive Damages and Expenses of Litigation" (Count IV) should be dismissed with prejudice.

January 10, 2024                                   Respectfully submitted,


                                                  */s/ Sadina Montani*
                                                  Sadina Montani (Bar #10476)
                                                  Eli Berns-Zieve (Bar #30590)
                                                  CROWELL & MORING LLP
                                                  1001 Pennsylvania Avenue, N.W.
                                                  Washington, D.C.  20004-2595
                                                  O: (202) 624-2500
                                                  F: (202) 628-5116
                                                  SMontani@Crowell.com
                                                  EBerns-Zieve@Crowell.com

                                                  *Counsel for MOM's Organic Market*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 10, 2024, a copy of the foregoing Memorandum in Support of Defendants' Renewed Motion to Dismiss was filed electronically with the clerk of court via ECF, which provided notice to all parties identified on the CM/ECF service list.


<u>/s/ Sadina Montani</u>
Sadina Montani